IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| IN RE: | § | |
|---|---|---|
| | § | |
| BARRY IRWIN HENSLEY | § | |
| ———————————————— | § | |
| | § | Case No. 4:14-cv-770 |
| | § | |
| HARRY (SONNY) MARGOLIS, et al. | § | |
| | § | |
| v. | § | |
| | § | |
| BARRY IRWIN HENSLEY | § | |

## MEMORANDUM OPINION AND ORDER ON APPEAL

Currently before the Court is Appellant Barry Irwin Hensley's appeal of the Bankruptcy Court's orders entering judgment against Appellant in its ruling on, and denying evidentiary objections raised in response to, Appellees' Second Motion for Summary Judgment disposing of all claims of the parties. Jurisdiction over this matter is proper in this Court as an appeal from a final judgment of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a).

After reviewing the parties' briefs, the record in this case, and the applicable law, the Court **AFFIRMS** the order of the Bankruptcy Court.

I.   **PROCEDURAL AND FACTUAL BACKGROUND**

On November 26, 2012, Appellees Harry Margolis and Dana Margolis filed their original complaint in Adversary Proceeding No. 12-4180 in the United States Bankruptcy Court for the Eastern District of Texas. On March 26, 2014, Appellees (Plaintiffs in the adversary action) filed their Second Motion for Summary Judgment (Doc. No. 24 in USBC Case No. 12-4180[1]),

---

[1] The Court will refer to docket entries in the adversary action as "USBC Doc. No. XX" and to docket entries in the instant case as "Doc. No. XX."

1

which is at the core of the instant appeal. On October 1, 2014, the Bankruptcy Court entered four documents: (1) an Order Granting Plaintiffs' Second Motion for Summary Judgment (USBC Doc. No. 33); (2) an Order Denying Defendant's Evidentiary Objections Contained in Defendant's Response to Plaintiffs' Second Motion for Summary Judgment (USBC Doc. No. 34); (3) a Judgment (USBC Doc. No. 35); and (4) a Memorandum of Decision Regarding Plaintiffs' Second Motion for Summary Judgment (USBC Doc. No. 36). On October 14, 2014, Appellant filed a Notice of Appeal in the Bankruptcy Court (USBC Doc. No. 41) from "the judgment, order, or decree of the bankruptcy judge entered in this adversary proceeding on the 1st day of October 2014." The same Notice of Appeal, with a Bankruptcy Cover Sheet, a copy of the docket of the Bankruptcy Court adversary proceeding, a copy of the Judgment and a copy of the Memorandum of Decision attached, was then filed in this Court on November 25, 2014 (Doc. No. 1). The Appellant's Brief was filed on December 2, 2014 (Doc. No. 2) and the Appellees' Brief was filed on December 30, 2014 (Doc. No. 4). On July 14, 2015, Appellees filed Notice (Doc. No. 6) of the Bankruptcy Court's Order in Bankruptcy Case No. 15-40508, a Chapter 13 proceeding, lifting the automatic stay to permit litigation to proceed.

This case revolves around a contract between Appellees, a couple who wished to have a home built, and Appellant, a contractor who wished to build the home. Although the parties often disagree about what was promised, for how much, and what happened at the time the contract fell apart, the main thrust of the matter is that Appellees claim they entered into a contract with Appellant and paid him substantial sums of money in his role as a contractor. Appellant then allegedly diverted some of that money to other uses and ultimately could not complete the project. The parties then proceeded to litigate in state court; arbitrate before a state-court-ordered Arbitrator; and, on Appellant's filing for Chapter 7 relief, in the Bankruptcy Court.

Appellees filed the adversary action in the Bankruptcy Court and obtained a lift of the automatic stay in the Chapter 7 proceeding to allow the matter that is the subject of this appeal to continue.

The Bankruptcy Court's Memorandum of Decision contains a succinct Factual and Procedural Background of the case as it was determined in the adversary action (referring to Appellant as Defendant and Appellees as Plaintiffs):

> In mid-2008, the Plaintiffs began discussions with the Defendant with regard to the proposed construction of a residence for the Plaintiffs in the Shaddock Creek Estates development near Frisco, Texas. After having received an estimate from the Defendant regarding the costs of constructing the home, the Plaintiffs contracted with the Defendant in the summer of 2009 to construct the residence. The construction process was a contentious one, with each side now contending that various actions of the other precluded the successful construction of the house as contemplated.
>
> On September 10, 2010, the Plaintiffs filed a state court lawsuit against the Defendant for breach of fiduciary relationship before the 219th Judicial District Court of Collin County, Texas (the "State Court") under case no. 219-03753-2010 (the "State Court Litigation"). On February 24, 2012, the State Court entered an order abating the prosecution in state court and submitting the matter to arbitration by the agreement of the parties. Richard Abernathy, Esq. was appointed as the Arbitrator by the State Court.
>
> Before that arbitration could take place, on October 15, 2012, the Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court under Case No. 12-42785, the Hon. Brenda T. Rhoades, presiding. After a contested hearing in the bankruptcy case, the Court modified the stay in order to allow the arbitration hearing to take place and for a final judgment to be entered. FN5.
>
>> FN5. Meanwhile, the Plaintiffs had timely filed a complaint to determine dischargeability of a debt on November 26, 2012, seeking to except their claims from the scope of any discharge granted to the Defendant. The prosecution of this adversary proceeding was subsequently abated to allow that state court process to be completed. That abatement was terminated on August 16, 2013.
>
> On April 17, 2013, the Arbitrator ruled that the Defendant, jointly and severally with other parties, owed the sum of $98,737.99 to the Plaintiffs "for violations of Chapter 162, Texas Property Code, FN6 including Section 162.005, Texas Property Code." The Arbitrator also awarded to the Plaintiffs attorney's

3

fees in the sum of $75,000, court costs of $4,204.57, and denied all of the counterclaims filed by the Defendant. That arbitration award was finalized into a Final Judgment issued by the State Court on April 19, 2013 (the "State Court Judgment"). In interpreting the arbitration award and granting final judgment, the State Court confirmed the award in favor of the Plaintiffs and against the Defendant for "$98,737.99 for violation and fraud under Chapter 162, Texas Property Code, including a finding of fraudulent conduct under 162.005 of said Texas Property Code." No other findings of fact or conclusions of law were entered. The Final Judgment also confirmed the attorney's fee award, the court costs assessment and the denial of the Defendant's counterclaims. It further ordered that post-judgment interest would accrue on the judgment at the rate of 5% per annum. No appeal was taken from the entry of the State Court Judgment.

> FN6. *See* 5 TEX. PROP. CODE ANN. § 162.001(a) *et. seq*. (Vernon 2011 and Vernon Supp. 2014). The provisions of Chapter 162 are often referenced collectively as the Texas Construction Trust Fund Act (hereafter referenced as the "CTFA").

After the parties renewed the prosecution of this adversary proceeding, the Plaintiffs filed this Second Motion for Summary Judgment. FN12. They assert that there are no genuine issues of material fact pertaining to the CTFA award and that, under such uncontested facts, they are entitled to a determination as a matter of law that the sum of $98,737.99 awarded for violations of the CTFA, together with other ancillary awards, as evidenced by the State Court Judgment, are collectively nondischargeable as a debt for fraud or defalcation while acting in a fiduciary capacity under §523(a)(4). FN13.

> FN12. A first motion for summary judgment had been filed by the Plaintiffs after the abatement of this lawsuit had been terminated, but it was dismissed by the Court as premature since the post-abatement management conference resulted in certain clarifying directives being issued to the Plaintiffs.

> FN13. As stated earlier, the Plaintiffs' amended complaint also contains asserted causes of action under 11 U.S.C. §523(a)(2)(A) and §523(a)(6). The (a)(6) claim was not addressed by the Second Motion for Summary Judgment. The Second Motion for Summary Judgment did address the same portion of the award under the State Court Judgment under §523(a)(2)(A). However, because of the summary judgment granted herein under §523(a)(4), the Court need not adjudicate those claims under either subsection.

Memorandum of Decision (USBC Doc. No. 36) at 2-5 (footnotes referring to the parties' exhibits before the Bankruptcy Court omitted; substantive footnotes retained). The Bankruptcy Court

went on to grant Appellees' Second Motion for Summary Judgment and found the $98,737.99 in actual damages from the State Court Judgment to be nondischargeable, along with $54,750.00 in attorneys' fees and $3,069.34 in court costs from the State Court Judgment, with an additional $293.00 in courts costs incurred in the adversary proceeding. Memorandum of Decision at 19-22. In sum, the total amount found nondischargeable from the State Court Judgment is $156,557.33, along with $293.00 from the adversary proceeding.

Appellant appeals these findings, as they are memorialized in the Bankruptcy Court's Judgment (USBC Doc. No. 35) and the Memorandum of Decision (USBC Doc. No. 36). Those two documents are listed in Appellant's Notice of Appeal. Appellant added the Bankruptcy Court's Order Granting Plaintiffs' Second Motion for Summary Judgment (USBC Doc. No. 33) and its Order Denying Defendant's Evidentiary Objections Contained in Defendant's Response to Plaintiffs' Second Motion for Summary Judgment (USBC Doc. No. 34) to his Appellant's Brief before this Court, though they are not mentioned in the Notice of Appeal. Specifically, Appellant summarizes the issues he raises on appeal as:

1. Whether the Bankruptcy Court can grant a motion for summary judgment based upon collateral estoppel where such assertion or affirmative defense is not plead and was not a ground upon which the movant relied for summary judgment.

2. Whether the Bankruptcy Court erred in granting Plaintiffs' Second Motion for Summary Judgment [ ] in its order dated October 1, 2014 [ ] and through the reasoning set forth in the Judgment [ ] and the Memorandum of Decision [ ], because of the following issues:

    a. Sub-issue 1: Whether, as a matter of law, a state court judgment against Appellant containing the word "fraud" is sufficient to create a preclusive effect such that the debt liquidated therein is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

    b. Sub-issue 2: Whether the Texas Construction Trust Fund Act creates a fiduciary relationship so as to deny the

> discharge of Appellant's debt to Plaintiffs pursuant to 11 U.S.C. § 523(a)(4), for fraud or defalcation while acting in a fiduciary capacity.
>
> 3. Whether the Bankruptcy Court erred in denying Defendant's evidentiary objections in Defendant's Response to Plaintiffs' Second Motion for Summary Judgment and Brief in Support [ ], especially in light of the evidentiary deficiencies noted in the Order Authorizing the Supplementation of the Summary Judgment Record [ ] to which Plaintiffs failed to adhere.

Appellants Brief (Statement of the Issues) (Doc. No. 2) at 6-7 (citations to the USBC docket omitted). The Court will address each issue in turn.

## II. STANDARD OF REVIEW

### A. Bankruptcy Appellate Review

This Court reviews the Bankruptcy Judge's findings of fact for clear error. *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701 (5th Cir. 2003). A finding of fact is only clearly erroneous if the reviewing court has a definite and firm conviction that the finding was in error. *Id.* The Court conducts a *de novo* review of the Bankruptcy Judge's conclusions of law. *Id.*

### B. Summary Judgment

Rule 56(a) requires the issuance of summary judgment "if there is no genuine issue as to any material fact," and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 447 U.S. 317, 323 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine dispute of material fact. *Id.* at 322. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d

446, 454 (5th Cir. 2005). A dispute is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248. The Court must view the evidence and draw inferences in the light most favorable to the nonmoving party. *Id*. at 255; *Tolan v. Cotton*, 134 S. Ct. 1861, 1862 (2014) (per curiam); *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

## III. DISCUSSION AND ANALYSIS

Appellees generally argue in response to the same issues Appellant raises, though somewhat differently in form and order. The Court will address each point as the Court interprets the parties' arguments.

### A. Invoking The Doctrine Of Collateral Estoppel *Sua Sponte*

Appellant argues that the Bankruptcy Court improperly granted summary judgment in favor of Appellees based in part on the doctrine of issue preclusion, because that doctrine was not pleaded or otherwise raised in Appellees' summary judgment papers. Appellant does not complain that the Bankruptcy Court's collateral estoppel *analysis* was incorrect; instead, he simply claims that "the Bankruptcy Court reversibly erred in granting summary judgment by relying upon a basis not asserted in Plaintiffs' Second Motion for Summary Judgment or pleadings." Appellant's Brief at 10-11.

Appellant's argument is without merit. Even if the Appellees did not explicitly use the words "collateral estoppel" or "issue preclusion" in their pleadings on summary judgment before the Bankruptcy Court, that is not a bar to the Bankruptcy Court raising the doctrine *sua sponte*.

First, collateral estoppel applies in the bankruptcy context, including in bankruptcy appeals to the United States District Court on the issue of nondischargeability and the effect of collateral estoppel on a prior state court judgment:

> Collateral estoppel, or issue preclusion, "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue

7

cannot again be litigated between the same parties in any future lawsuit." *Schiro v. Farley,* 510 U.S. 222, 232 (1994) (internal quotations omitted). "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States.,* 440 U.S. 147, 153 (1979) (citing *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n.5 (1979)). Where the factual issues for the creditor's theory of nondischargeability have been actually litigated in a prior proceeding, neither the creditor nor the debtor may relitigate those grounds. *RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1294 (5th Cir.1995).

When a party is asserting collateral estoppel regarding a state court judgment, the court applies the collateral estoppel law of that state. *In re Pancake,* 106 F.3d 1242, 1244 (5th Cir.1997). Under Texas law, collateral estoppel occurs when: "(1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case." *Id.* (citing *in re Garner,* 56 F.3d 667 (5th Cir.1995); *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 806 (Tex.1984)).

*Whitaker v. Moroney Farms Homeowners' Ass'n*, No. 4-14-CV-700, 2015 WL 3610306, at *3 (E.D. Tex. June 5, 2015) (appeal of bankruptcy adversary action).

In addition, a federal court may raise the issue of collateral estoppel *sua sponte*:

Finally, the State parties argue that even if they earlier failed to raise the preclusion defense, this Court should raise it now *sua sponte*. Judicial initiative of this sort might be appropriate in special circumstances. Most notably, "if a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised. This result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." *United States v. Sioux Nation*, 448 U.S. 371, 432, 100 S. Ct. 2716, 65 L. Ed. 2d 844 (1980) (REHNQUIST, J., dissenting) (citations omitted).

*Arizona v. California*, 530 U.S. 392, 412 (2000). The "special circumstances" the Supreme Court discussed above is consistent with the situation here, where the Bankruptcy Court was wholly aware of the judgment and the issues raised in the State Court Judgment, developed out of the final decision in arbitration. The United States Court of Appeals for the Fifth Circuit has ruled similarly:

8

> This circuit also recognizes two instances in which the district or appellate court can *sua sponte* dismiss an action on issue preclusion grounds. *Nagle v. Lee*, 807 F.2d 435, 438 (5th Cir. 1987). One exception allows a court to raise the issue preclusion defense on its own when all the relevant data and legal records are before the court and the demands of comity, continuity in the law, and essential justice mandate judicial invocation of the principles of issue preclusion. *See id.* at 439 n.2 (*citing American Furniture Co. v. International Accommodations Supply,* 721 F.2d 478, 482 (5th Cir.1981)

*Williams v Midwest Employers Cas. Co.*, 34 F. App'x 152, 2002 WL 496395, at *6 (5th Cir. Mar. 21, 2002). The Fifth Circuit's reasoning directly supports the Bankruptcy Court's decision to apply collateral estoppel *sua sponte* in this case.

Accordingly, the mere fact that the Appellees did not specifically plead collateral estoppel is no bar to the Bankruptcy Court's *sua sponte* application of the doctrine. Appellant's first issue thus fails as a matter of law.

### B. The State Court Judgment And Effect Of The Texas Construction Trust Fund Act

Appellant next makes a two-pronged argument that, first, the mere use of the word "fraud" in the State Court Judgment was insufficient to render the debt that judgment imposed nondischargeable under federal bankruptcy law; and, second, that the CTFA does not create a fiduciary relationship in this circumstance so as to support a finding of nondischargeability.

#### 1. The State Court Judgment's Finding Of "Fraud" As A Basis For Nondischargeability In Bankruptcy

Wholly aside from the issue whether the Bankruptcy Court could properly apply collateral estoppel, Appellant also argues that there was insufficient information in the State Court Judgment on which to meet the standard of nondischargeability in the federal bankruptcy proceeding.

The Fifth Circuit has noted that "the determination of whether a debt is nondischargeable under [§ 523] has been a matter of federal bankruptcy law, not state law." *Matter of Dennis*, 25

9

F.3d 274, 277 (5th Cir. 1994) (citations omitted). The Fifth Circuit went on:

> Bankruptcy courts must therefore look beyond the labels which state courts – and even parties themselves – give obligations which debtors seek to have discharged.
>
> * * *
>
> The reason for these well-settled principles is that parties and state courts, as a general rule, do not label obligations with federal bankruptcy standards in mind. Even if a state court reviews an issue which is similar to one created by the nondischargeability provision in the bankruptcy code, the state-law concept will likely differ from the specific federal bankruptcy doctrine in question.
>
> * * *
>
> Hence, in only limited circumstances may bankruptcy courts defer to the doctrine of collateral estoppel and thereby ignore Congress' mandate to provide plenary review of dischargeability issues. Collateral estoppel applies in bankruptcy courts only if, *inter alia*, the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question – that is, an issue which encompasses the same *prima facie* elements as the bankruptcy issue – and the facts supporting the court's findings are discernible from that court's record.

*Id*. at 277-78 (citations and footnote omitted). Accordingly, Appellant argues that the Bankruptcy Court improperly based its grant of summary judgment on the State Court Judgment, which Appellant contends did not contain specific findings on the identical dischargeability issue before both the state court and the Bankruptcy Court.

However, the Fifth Circuit has held that specific findings of the nature Appellant would require are not necessary in a state judgment so long as the state judgment's intent *vis a vis* the similar terms in the federal bankruptcy code are the same and can be discerned from the available record. *Matter of Davis*, 3 F.3d 113, 116 (5th Cir. 1993) (state court findings that the appellant's "receipt of informal dividends by making profit sharing contributions for his own benefit and to the exclusion of" the appellee was a willful breach of a fiduciary duty, and therefore was "sufficient to prevent discharge of both debts under section 523(a)(4).").

Here, the Bankruptcy Court provided a detailed rendition of its reasoning based on the

10

existing Arbitrator's proceedings and the State Court Judgment, including a specific definition of the term "fraud," comparing its meaning under the Texas CTFA to the federal bankruptcy code. The Bankruptcy Judge stated in part,

> The summary judgment record clearly demonstrates that the fact of the Defendant's misconduct was essential to the entry of that portion of the State Court Judgment for which the Plaintiffs seek a determination of nondischargeability under § 523(a)(4). The State Court Judgment contains a finding that the Defendant violated the CTFA by explicit reference to its statutory location and it specifically finds that the actions of the Defendant, resulting in the CTFA violation, constituted ***fraudulent conduct*** as defined by § 162.005 of the CTFA. The summary judgment record is also clear that the facts as reflected in the State Court Judgment were fully and fairly litigated in the first action, as initially determined by the Arbitrator, and as subsequently affirmed by the 219th Judicial District Court in the State Court Judgment. An actual evidentiary hearing was conducted by the Arbitrator. Upon consideration of the admitted evidence, the Arbitrator issued the award to the Plaintiffs which was subsequently confirmed by the State Court pursuant to § 171.087 of the Texas Civil Practice & Remedies Code.

Memorandum of Decision (USBC Doc. No. 36) at 11-12 (emphasis added, footnotes omitted).

The Bankruptcy Judge also provided the state definition of fraud under the CTFA:

> Section 162.005(1) of the Texas Construction Trust Fund Act states that:
>
> > (1) A trustee acts with "intent to defraud" when the trustee:
> >
> > (A) **retains, uses, disburses, or diverts trust funds with the intent to deprive the beneficiaries of the trust funds**;
> >
> > (B) retains, uses, disburses, or diverts trust funds and fails to establish or maintain a construction account as required by Section 162.006 or fails to establish or maintain an account record for the construction account as required by Section 162.007; or
> >
> > (C) uses, disburses, or diverts trust funds that were paid to the trustee in reliance on an affidavit furnished by the trustee under Section 53.085 if the affidavit contains false information relating to the trustee's payment of current or past due obligations.
>
> 5 Tex. Prop. Code Ann. § 162.005 (Vernon 2007).

*See* Memorandum of Decision at 11 n.14 (emphasis added).

11

In comparison, the Fifth Circuit has addressed the meaning of fraud for the purposes of § 523(a)(4):

> Under 11 U.S.C. § 523(a)(4), a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" may not be discharged in bankruptcy. In construing this section, this court has stated that this discharge exception "was intended to reach those debts incurred through abuses of fiduciary positions and through **active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's**." *In re Boyle*, 819 F.2d 583, 588 (5th Cir.1987).

*Matter of Miller*, 156 F.3d 598, 602 (5th Cir. 1998) (emphasis added), *cert. denied*, 526 U.S. 1016 (1999).

The language of § 162.005 compared with the Fifth Circuit's interpretation of the meaning of § 523(a)(4) reflects that each statute defines "fraud" and "fraudulent conduct" in the same manner. Accordingly, the Bankruptcy Court was perfectly able to discern the meaning of "fraud" as used in the State Court Judgment for the purposes of determining nondischargeability in federal bankruptcy law. Appellant's contention is without merit.

### 2. Fiduciary Duty Under The CTFA And 11 U.S.C. § 523(a)(4)

Aside from the argument above, Appellant contends that the CTFA does not create a fiduciary relationship cognizable under federal bankruptcy law.

#### (a) The September 1, 2009, Amendment To The CTFA

First, Appellant contends that the current version of the CTFA, upon which Appellees based their arguments, was not yet effective until September 1, 2009, the month *after* Appellees entered into their construction contract with Appellant.[2] Therefore, Appellant argues, that

---

[2] Although he does not spell out the nature of the amendment in his Appellant's Brief, his Answer to the Complaint in the bankruptcy adversary action fleshes out his argument that the September 1, 2009, amendment allegedly allowed for a private right of action by a homeowner under the CTFA, which allegedly had not previously existed. (USBC Doc. No. 22 at 6-7.)

version of the CTFA could not have been applied retroactively so as to give Appellees' assertion of a "fiduciary duty" effect. Nonetheless, the 219th Judicial District Court of Collin County did apply that version of the CTFA, and awarded Appellees money damages thereupon in the State Court Judgment.

Unfortunately, this federal Court is not the proper forum for reviewing the application or interpretation of a state law by a state court. As Appellees appropriately point out, the *Rooker/Feldman* doctrine requires that, "[a]bsent specific law otherwise providing, [*Rooker/Feldman*] directs that federal district courts lack jurisdiction to entertain collateral attacks on state court judgments." *Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir. 1994) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)); *see also In re Rabalais*, 496 F. App'x 498, 500 (5th Cir. 2012) (finding that "bankruptcy courts may not sit as appellate courts and revisit the merits of state court decisions," citing *Rooker* and *Feldman*). If a state trial court errs in an application of its own state law, its "judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court." *Liedtke*, 18 F.3d at 317. "A state court judgment is 'attacked' when the losing party in a state court action seeks 'what in substance would be appellate review of the state judgment.'" *In re Rabalais*, 496 F. App'x at 500 (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)). "Like the bankruptcy court, we lack the authority to review the decision of the [state] court." *Id*. That is the precise situation here.

Appellant contends that the state trial court erred in its State Court Judgment by applying the version of the CTFA's September 1, 2009, amendment to the August 2009 contract between the parties. However, it is undisputed that Appellant did not appeal the state trial court's

---

Because this issue is not cognizable on federal review, this Court need not determine whether the difference is as Appellant alleged.

judgment. Accordingly, no Texas appellate court has had the opportunity to determine whether the trial court applied the CTFA correctly. Therefore, Appellant's argument of improper retroactive application by the state trial court is not cognizable in federal court.[3]

### (b) Meaning Of "Fiduciary Duty" Under The CTFA And 11 U.S.C. § 523(a)(4)

Second, Appellant argues that the CTFA does not create a fiduciary relationship in this instance at all. He contends that the term "fiduciary" does not have the same meaning under 11 U.S.C. §523(a)(4) as under common law. Instead, he asserts, a fiduciary relationship for the purposes of § 523(a)(4) arises only under express or technical trusts outside of strictly contractual obligations. However, the very authority upon which he relies also specifies that "[s]tatutory trusts, by contrast, can satisfy the dictates of § 523(a)(4)." *In re Jacobson*, 422 B.R. 183, 192 (S.D. Tex. 2010). But, "*to meet the requirements of § 523(a)(4), a statutory trust must (1) contain a definable res and (2) impose 'trust-like' duties.*" *Id.* (quoting *Tex. Lottery Comm'n v. Tran*, 151 F.3d 339, 342-43 (5th Cir. 1998) (emphasis added in *Jacobson*)).

The Fifth Circuit has held that the CTFA can meet these requirements under § 523(a)(4).

> The Trust Fund Statute is one way in which the relevant "fiduciary capacity" under Section 523 may be created. *In re Nicholas,* 956 F.2d 110, 114 (5th Cir. 1992). The statute requires payments for construction contracts for the improvement of real property to be treated as "trust funds." Tex. Property Code § 162.001. The recipient of those funds is the "trustee," and the subcontractors to whom the funds are owed are the beneficiaries. *Id.* at §§ 162.001–003. Trustees, including the officers of companies, who misapply trust funds may face criminal penalties. *Id.* at §§ 162.031–032. In *Nicholas,* this court analyzed the statute and determined that the requirement of a trust fund, with rules covering how the funds may be spent, "creates fiduciary duties encompassed by 11 U.S.C. § 523(a)(4)." *Nicholas,* 956 F.2d at 114. But the statute only creates a fiduciary duty to the extent that activity is wrongful under the statute. *Id.* For purposes of Section

---

[3] The Bankruptcy Judge appears to have addressed this argument, if briefly, in the Memorandum of Decision. (Doc. No. 36 at 19 n.23.) There, the Bankruptcy Judge noted that "even under earlier, more restrictive versions of the CTFA, such limited findings would have constituted grounds for nondischargeability under § 523(a)(4)." *Id.* (citing *Boyle v. Abilene Lumber, Inc.*, 819 F.2d 583 (5th Cir. 1987) and *Nicholas*, 956 F.2d 110 (5th Cir. 1992)).

523(a)(4), a fiduciary duty only arises if there is a simultaneous wrongful misapplication of funds.

*Matter of Plumber*, 892 F. App'x 296, 299 (5th Cir. 2015).[4]

Having established the potential for a fiduciary relationship under the CTFA for § 523(a)(4) purposes, the Fifth Circuit went on to discuss the affirmative defenses available to a contractor/debtor under the CTFA that might negate the creation of a fiduciary duty, including specifically the "actual expenses" affirmative defense. *Matter of Plumber*, 892 F. App'x at 301. Under that affirmative defense, a contractor/debtor may, for example, "use the payments they receive from construction projects to keep those projects going . . . ." *Id.* (quoting *Nicholas*, 956 F.2d at 113).[5] "Therefore, under *Nicholas*, a creditor claiming Section 523(a)(4) nondischargeability through the Texas Construction trust Fund Statute must show that (1) the contractor intentionally, knowingly, or with intent to defraud diverted trust funds and (2) the affirmative defenses in the statute do not apply." *Id.* at 302.[6]

Of course, for an affirmative defense to apply, a defendant (in this case, the contractor/debtor Appellant) must actually *assert* the affirmative defense. As the Fifth Circuit has recognized, "[g]enerally, under [Federal Rule of Civil Procedure] 8(c), affirmative defenses

---

[4] *Matter of Plumber* is an unreported decision issued after briefing was completed in this case. Nonetheless, it compiles and explains in detail the Fifth Circuit's past reported decisions in this area and the Court considers it highly authoritative, if not precedential.

[5] Texas Property Code § 162.031(b) specifically states, "It is an affirmative defense to prosecution or other action brought under Subsection (a) that the trust funds not paid to the beneficiaries of the trust were used by the trustee to pay the trustee's actual expenses directly related to the construction or repair of the improvement or have been retained by the trustee, after notice to the beneficiary who has made a request for payment, as a result of the trustee's reasonable belief that the beneficiary is not entitled to such funds or have been retained as authorized or required by Chapter 53."

[6] The Fifth Circuit further noted that, "[i]n the bankruptcy context, the burden is on the creditor to establish that an affirmative defense is inapplicable – rather than on the debtor to establish that one is applicable – because the creditor has the ultimate burden of proving that a debt falls within the scope of 11 U.S.C. § 523(a)(4)." *Id.* at 302 n.2 (citing *Nicholas*, 956 F.2d at 114).

must be raised in the first responsive pleading." *Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009); *see also Talbert v. Am. Risk Ins. Co., Inc.*, 405 F. App'x 848, 851 (5th Cir. 2010). Federal Rule of Bankruptcy Procedure 7008 makes Fed. R. Civ. P. 8 applicable to adversary actions in bankruptcy, as in the instant case. The Fifth Circuit has further observed that, where an affirmative defense is not raised in the first responsive pleading, "where the matter is raised by the trial court [or the litigants and] does not result in unfair surprise, technical failure to comply precisely with Rule 8(c) is not fatal, and in such a situation the court may hold that the defense is not waived." *Talbert*, 405 F. App'x at 851 (internal quotation marks and citations omitted). In fact, "[a]n affirmative defense is not waived if it is raised at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond." *Id*.

Here, Appellant did not meet any of these relaxed requirements, even considering "the overall context of the litigation[.]" *Pasco*, 566 F.3d at 572. A close review of his Answer and his Response to Appellees' Second Motion for Summary Judgment before the Bankruptcy Court reveals that he (1) did not assert any affirmative defenses at all in his Answer and (2) did not argue any affirmative defenses under the CTFA in his Response, including specifically the "actual expenses" affirmative defense. (*See generally* USBC Doc. Nos. 22 and 25.) Appellant makes a halfhearted attempt at raising this defense in the Appellant's Brief, stating:

> Further, in both *Boyle* and *In re Swor*, the Fifth Circuit held that the funds obtained under the Texas Construction Trust Fund Act need not be spent only on the project for which they were received, they may also be spent on other projects or on expenses related to the general business overhead. It is the absence of a requirement prohibiting spending trust funds for non-trust purposes that leads to this result.
>
> Accordingly, even if Appellant applied funds from Appellees on an expense other than its project, as asserted by Appellees and denied by Appellant, such conduct does not necessarily violate the Texas Construction Trust Fund Act so as to create a fiduciary duty."

Appellant's Brief (Doc. No. 2) at 18. This falls squarely into the category of "too little, too late." Appellant simply did not raise this affirmative defense in the time and place in which he should have – in his pleadings in the adversary action before the Bankruptcy Court. Moreover, to the extent Appellant might be understood to attempt to raise it now, the statement quoted above is insufficient to state the affirmative defense and to argue it factually; in fact, Appellant does not actually assert that he did apply Appellees' funds as an expense on another project. He merely states that "even if" he had done so, the affirmative defense would apply. There is no factual basis there on which to base a reply by Appellees or a determination by this Court. Furthermore, to allow Appellant to raise such an affirmative defense now, after resolution of the dispute before the Bankruptcy Court and on appellate review by this Court, would only be prejudicial to Appellees. *Pasco*, 566 F.3d at 572; *Talbert*, 405 T. App'x at 851.

Accordingly, the argument Appellant briefly raises in this regard is without merit.

Returning to the main thrust of establishing § 523(a)(4) fiduciary duty under the CTFA, the Bankruptcy Court observed that the "two requisite elements for a determination of nondischargeability under § 523(a)(4) [are] a debt created: (1) by fraud and (2) while acting in a fiduciary capacity." Memorandum of Decision at 19. The Fifth Circuit has reaffirmed these requirements. *Plumber*, 892 F. App'x at 299 and *supra*. Here, the Bankruptcy Court appropriately found that the terms "fraud" and "fraudulent conduct" as used in the State Court Judgment were equivalent to the meaning of "fraud" under the federal bankruptcy code. In doing so, the Bankruptcy Court also appropriately found that Appellant had committed fraudulent conduct in misapplying the funds paid by Appellees for the construction of their home. Memorandum of Decision (USBC Doc. No. 36) at 11-12. Under the CTFA, and controlling Fifth Circuit law, that created the fiduciary relationship necessary for a determination

17

of nondischargeability under § 523(a)(4). There is no genuine issue of material fact remaining and the Bankruptcy Court was correct in granting summary judgment on the issue that the amount it identified was nondischargeable.

### C. The Bankruptcy Court's Denial of Appellant's Evidentiary Objections On Summary Judgment

Next, Appellant contends that the Bankruptcy Court erred in denying his evidentiary objections proffered in his response to the Appellees' Second Motion for Summary Judgment in the adversary action. He did not identify this issue in his Notice of Appeal. Nonetheless, his brief to this Court states in full:

> Notwithstanding the other objections which Appellant made, which are incorporated by reference, the Court's ruling on Paragraph 13 of the Margolis Affidavit is clearly erroneous. Without question Paragraph 13 of the Margolis Affidavit is replete with hearsay, legal conclusions, and contains statements in direct violation of the best evidence rule. Appellant objected on such grounds, but the objection was overruled under the assertion that Appellees have "the ability as an involved party to make characterizations regarding the nature of documents and the purported actions of the parties involved in the actions leading to the dispute." Had the Bankruptcy Court not improperly considered such statements, the Motion for Summary Judgment could not have been granted.

Appellant's Brief at 18-19 (footnotes omitted). Appellant has not explained his argument or why the finding of the Bankruptcy Court was incorrect. Furthermore, he has cited no authority at all in support of his bare contention (the two footnotes omitted from the passage above were both to the record – the Margolis Affidavit and the Order of the Bankruptcy Court – not to any legal authority). Accordingly, he has inadequately briefed any issue presented here, and it is waived. *In re Repine*, 536 F.3d 512, 518 n.3 (5th Cir. 2008) (bankruptcy case) ("Therefore, this evidentiary argument is waived due to inadequate briefing," which consisted of conclusory statements and lacked citation to authority supporting the party's position, citing *L & A Contracting Co. v. Southern Concrete Servs., Inc.*, 17 F.3d 106, 113 (5th Cir. 1994)); *see also*

*MM Steel, L.P. v. JSW Steel (USA) Inc.*, 771 F.3d 301, 303 n.2 (5th Cir. 2014) (citing and quoting *In re Repine*, 536 F.3d at 518 n.5). The Court will therefore disregard Appellant's arguments as to his evidentiary objections to the Margolis Affidavit.

### D. The Bankruptcy Court's Dismissal Of Appellant's Counterclaims

Finally, Appellant asserts in even more conclusory form that the Bankruptcy Court erred in dismissing his counterclaims in the adversary action. He did not identify this as an issue in either his Notice of Appeal or even in the issue statement quoted in Section I above. His argument in full states:

> Inasmuch as the Bankruptcy Court's ruling was in error with regard to Plaintiffs' Second Motion for Summary Judgment, the basis for the relief requested by Appellant through his counterclaim remains in force. Specifically, the principles of equity which govern proceedings in the Bankruptcy Court would support the recovery of attorney's fees and costs in light of the nature of the litigation, the respective financial positions of the parties and the false basis of Appellees' claims.

Appellant's Brief at 19. The Court has already affirmed the Bankruptcy Court's rulings on summary judgment, above. Appellant has added no argument to his two-sentence assertion that his counterclaims survived dismissal and he has cited no authority whatsoever. For the reasons stated immediately above, he has inadequately briefed this claim and it is waived. *In re Repine*, 536 F.3d at 518 n.5.

## IV. CONCLUSION

For the reasons stated herein, the Court finds no error in the findings of the Bankruptcy Court in the above-numbered and captioned case, and its judgment is hereby **AFFIRMED**.

**SIGNED this 22nd day of September, 2015.**

19

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE